## In re RJR NABISCO, INC. SHAREHOLDERS LITIGATION.

Court of Chancery of Delaware, New Castle County.

Submitted: Jan. 29, 1990.
Decided: Feb. 8, 1990.

Joseph A. Rosenthal of Morris, Rosenthal, Monhait & Gross, P.A., Wilmington, and Roger W. Kirby of Kaufman Malchman Kaufmann & Kirby, New York City, and Ralph L. Ellis of Abbey & Ellis, New York City, for plaintiffs.

Robert K. Payson of Potter Anderson & Corroon, Wilmington, and Melvyn L. Cantor, and Lyndon M. Tretter of Simpson Thacher & Bartlett, New York City, for defendants Kohlberg Kravis Roberts & Co., RJR Holdings Corp., RJR Acquisition Corp. and RJR Nabisco, Inc.

Stephen P. Lamb, and Curtis Alva of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for defendants William S. Anderson, Albert L. Butler, Jr., John L. Clendenin, Martin S. Davis, Ronald H. Grierson, John W. Hanley, Charles E. Hugel, Vernon E. Jordan, Jr., Juanita M. Kreps, John D. Macomber, John G. Medlin, Jr., and Robert M. Schaeberle.

Grover C. Brown, Edward M. McNally, and Mary M. Johnston of Morris, James, Hitchens & Williams, Wilmington, and Jonathan M. Hoff, Dennis J. Block, Michael J. Maimone, and Beth J. Jacobwitz of Weil, Gotshal & Manges, New York City, for intervention applicants as defendants and counterclaimants.

## OPINION

ALLEN, Chancellor.

Pending is a motion to intervene as defendants and to assert a declaratory judgment counterclaim. Applicants are Lazard Freres & Company and Dillon Read & Company, Inc., the investment bank advisors to the special committee of the board of directors of RJR Nabisco, Inc. in the auction and sale of that company to an affiliate of Kohlberg Kravis Roberts & Co. ("KKR").

Also pending is a motion by plaintiffs— RJR shareholders prior to the KKR merger—to stay this litigation while a subsequently filed class suit by these plaintiffs charging the investment banks with negligence goes forward in the Supreme Court of the State of New York.

The pending action was brought on October 20, 1988 as a class action on behalf of RJR Nabisco's public common shareholders. Defendants are RJR, the directors of RJR at the time of the auction, and KKR and its affiliates. The theory of the amended complaint, in brief, is that in conducting an auction sale of the Company, the directors breached the fiduciary duties of care and loyalty that they owed in such circumstances to the corporation and its shareholders. The amended complaint also claims that KKR participated in or aided that breach. The applicants, who advised the special committee of directors that managed the sale process, were not made defendants in this suit,[1] although extensive discovery was had of them in connection with plaintiffs' application for a preliminary injunction.

On January 31, 1989, plaintiffs' application for a preliminary injunction enjoining the consummation of KKR's tender offer for RJR's stock was denied. *See In Re RJR Nabisco, Inc. Shareholders Litigation*, [1988–89 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 94,194, 1989 WL 7036 (Del. Ch.1989).

On February 28, 1989, the same plaintiffs filed suit against Lazard and Dillon in the Supreme Court of the State of New York alleging that the investment banks were negligent in conducting the auction and in valuing the bids of KKR and its competitor—a group involving management of the Company, Salomon Brothers Inc., and Shearson Lehman Hutton, Inc. This negligence was alleged to constitute a breach of duty running directly to the RJR shareholders and its alleged violation was said to have proximately caused injury to the class. Lazard and Dillon responded to the New York complaint on March 30, 1989 with a motion to dismiss or in the alternative to stay the action. The banks indicated in support of their request to stay the New York action that if the New York complaint was deemed to state a claim, the banks would submit to the jurisdiction of this court in which this earlier action against RJR,[2] KKR and the individual directors had already moved forward. On August 16, 1989, Justice Pecora of the New

---

1. Plaintiffs explain that the proposed intervenors could not have been made defendants because the applicants are, it is said, not subject to *in personam* jurisdiction here.

2. RJR has indemnified these investment banks from certain losses or damages. Pursuant to their undertakings to advise the special committee of the RJR board of directors, both investment banks secured indemnification from RJR for damages or loss that they incur as a result of those services. That indemnification appears to be broad, excluding, by its terms, only loss or damage judicially determined to arise primarily out of gross negligence, willful misconduct or bad faith of the banks.

York State Supreme Court denied the motion to dismiss. *Schneider, et al. v. Lazard Freres & Co. and Dillon, Read & Co., Inc.*, Index No. 06905/89. He did not address the motion to stay. That case is now on appeal before the New York State Supreme Court, Appellate Division—First Department.

In the Delaware action, KKR, RJR, and the director defendants filed an answer and amended answer on September 21 and October 31, 1989. The defendants alleged counterclaims seeking, among other things, a declaratory judgment that the special committee, "as advised by its advisors," acted properly in conducting the auction and accepting the KKR bid.[3]

On November 15, 1989, Lazard and Dillon filed their motion to intervene in the Delaware action pursuant to Chancery Court Rule 24.

## I.

As argued by the parties, this motion presents four issues: first, whether this court may properly assert personal jurisdiction over the plaintiffs with respect to the counterclaim that the applicants seek to assert; second, whether this court has subject matter jurisdiction over that counterclaim; third, assuming there is jurisdiction to adjudicate the proposed counterclaim, whether applicants have a "right" to litigate that claim in this court; and lastly, whether considerations of efficiency, fairness and comity dictate that applicants should be afforded the opportunity to litigate their counterclaim in this proceeding even if they possess no right to do so under Rule 24(a). These issues will be taken up in turn.

## II.

■ In my opinion, this court has personal jurisdiction over the plaintiffs in this action for the purpose of litigating any claim arising from or substantially relating to the acts and transaction that they allege as the basis of their amended complaint. Inarguably, a court has personal jurisdiction over a plaintiff as to any counterclaim asserted by a defendant arising out of the facts alleged in the complaint. *See* Chancery Court Rule 13(a); *Restatement (Second) of Judgments* § 9 (1982). There is not the slightest reason to hold that a different result pertains when a party not originally joined, but who meets the test of Rule 24 asserts a counterclaim arising out of the same facts as those alleged in the complaint.

In so concluding, I assume, in plaintiffs' favor, that the modern law of jurisdiction requires that minimum contacts between the defendant (by counterclaim) and the forum must exist before personal jurisdiction may effectively be asserted over that person. I further assume that service of process upon a person who as a plaintiff came into a foreign state temporarily, solely for the purpose of litigating a claim, would be inadequate to establish personal jurisdiction. That is, I assume that such a person could not constitutionally be involuntarily subjected to the jurisdiction of that state for the adjudication of unrelated claims.

But this case is altogether different than that. Here, plaintiffs are not threatened with adjudication of matters unrelated to those that they have brought before the court. Quite the opposite. The claims sought to be asserted arise out of the same transaction that will be litigated by the

---

**3.** Filed on October 31, 1989, the amended counterclaim seeks a declaration that the special committee, as advised by its advisors, conducted the auction properly and fairly and that the investment banks rendered with due care correct advice that could reasonably be relied upon by the special committee. The counterclaim describes the auction, from initiation with the management group's $75 proposal through the formation of the special committee, the hiring of the investment banks, and the first receipt of proposals from the management group, KKR,

and First Boston on November 18, 1988. The counterclaim further describes the assessment by the investment banks of the three proposals, the extension of the bidding until November 29, 1988, the receipt of three new bids on that date, and the final, according to the pleading, negotiating sessions on November 30, 1988, which resulted in the banks' assessment that the management group and KKR bids were both between $108 and $109 per share. Based on this valuation, the special committee accepted the KKR bid, the counterclaim asserts.

parties and adjudicated by the court. No sensitive reading of the teaching of the *International Shoe* case[4] and the more recent amplifications of that teaching[5] can indicate that fundamental fairness to plaintiffs, whether considered as the national class of RJR shareholders for whom this action has been brought or as the named plaintiffs only, would foreclose the adjudication of the proposed counterclaim in this forum.[6]

### III.

■ The question of subject matter jurisdiction involves not the constitutional question of fairness that is implicated in the question of personal jurisdiction, but the Delaware specialty of carrying forward and applying in fresh fields the ancient distinctions generated by the law-equity split. In working in this particular area, Delaware judges bear a particular responsibility to assist in the evolution of a workable body of rules that permits our divided system to achieve efficiency, while maintaining the special utility that this ancient division offers in the late 20th Century world.

Here, the argument is that applicants propose to litigate by a declaratory judgment counterclaim a strictly legal matter— their negligence or due care. No distinctively equitable relief is sought; plaintiffs only want damages from applicants. And there is, plaintiffs say, no distinctively equitable relationship between the applicant banks and the class. Therefore, it is said that this court would not have jurisdiction over a claim brought by plaintiffs as an original matter and can have no jurisdiction over the proposed declaratory counterclaim.

The question whether the class could assert a claim for damages cognizable in equity solely against one in contractual privity with its fiduciary, I take to be an open question. *Cf. Harman v. Masoneilan Intern., Inc.,* Del.Supr., 442 A.2d 487 (1982). I need not now express a view on that question, however, as I conclude that this court's subject matter jurisdiction over the proposed counterclaim is sound, even assuming that such an action could not be brought in Chancery originally. What distinguishes this case is the fact that an action against the fiduciary arising from the same transaction has been properly instituted in this court.

■ Assuming that applicants possess a Rule 24(a) *right* to intervene as a defendant, it would be anomalous if there were no subject matter jurisdiction with respect to their counterclaim, which would be a mandatory counterclaim under Rule 13. The law of the federal courts—which like this court, are courts of limited jurisdiction—establish that the District Court will have jurisdiction over a compulsory counterclaim asserted by a Rule 24(a) intervenor even if it would not have jurisdiction over that matter as an original matter.[7] Similarly here, this court's ancillary jurisdiction extends to compulsory counterclaims asserted by persons with a right under Rule 24(a) to intervene.

The harder case arises on the assumption that this is a case in which intervention could be granted only under the permissive standards of Rule 24(b). (If intervention is not permissible in any event, the question of subject matter jurisdiction will not, of course, arise).

**4.** *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

**5.** *E.g., Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

**6.** *Cf. Lamb v. Schmitt,* 285 U.S. 222, 52 S.Ct. 317, 76 L.Ed. 720 (1932); *Walker v. Calada Materials Co.,* 309 F.2d 74 (10th Cir.1962) (immunity to service of process does not extend to a person who comes into foreign jurisdiction in order to pursue litigation as a plaintiff, when process relates to litigation arising from the same facts or transactions as those plaintiff seeks to litigate).

**7.** *See, e.g., United States v. Martin,* 267 F.2d 764, 769 (10th Cir.1959); *Lenz v. Wagner,* 240 F.2d 666 (5th Cir.1957); *Coleman Capital Corp. v. Fidelity & Deposit Co.,* 43 F.R.D. 407 (S.D.N.Y. 1967).

When there is no independent basis for equitable jurisdiction, subject matter jurisdiction over new matters asserted by a permissive intervenor,[8] should, in my opinion, turn upon an evaluation of how closely the matters sought to be introduced into the case are tied to those facts that form the basis of the existing pleadings. Since the precondition of permissive intervention is itself so easily satisfied (a question of fact or law in common), such new matters may often fall too far from the core of the dispute being litigated to fit within our ancillary jurisdiction. But it is the tradition of equity courts ordinarily to take up the whole case, not parts of it. *See Pomeroy's Equity Jurisprudence*, §§ 181, 231–243 (S. Symons 5th ed.1941). And modern approaches to jurisdiction focus not upon the various legal theories that can be embossed upon the facts, but upon the facts themselves in determining what constitutes a "cause of action" or "claim." *See, e.g., Restatement (Second) of Judgments* § 24 (1982).

When the facts alleged in the intervenor's new "claim" in effect constitute the same facts or transaction as put in issue by the existing pleadings, a finding of Chancery jurisdiction might, in my opinion, be sustained. *Cf.* 7C C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1917 (1986).[9]

We have, however, more than that here because the proposed intervenors, far from being strangers to the existing parties, allegedly acted in the transaction in question at the behest of the defendants. In truth, the counterclaim appears largely to present a new legal theory of the already pleaded facts. *Cf. Wells v. Shearson Lehman/American Express, Inc.*, 72 N.Y.2d

11, 530 N.Y.S.2d 517, 526 N.E.2d 8 (1988) (release of all claims in action closely analogous to this action bars litigation of action closely analogous to the New York action).

■ Thus, in my opinion, this court has ancillary jurisdiction over the claims of every kind arising from the RJR acquisition transaction that could be asserted by the class against its fiduciaries and those who advised the fiduciaries. To hold otherwise is not compelled by our statutes or decided cases and would contribute to a wooden and unproductive jurisprudence concerning the operation of our dual jurisdiction court system.

### III.

Thus, concluding that this court does have jurisdiction—in both the personal and subject matter senses of the term—to hear the proposed counterclaim, the analysis turns to Rule 24. As indicated, that analysis leads me to the conclusion that while mandatory intervention would not be proper in this instance, permissive intervention would be authorized. The critical concluding question is whether the court's discretion should be exercised to grant or to deny that intervention. The answer to that turns on matters ordinarily not considered in a Rule 24(b) context. I refer to considerations of comity and systemwide efficiency that the concurrent pendency of the New York action implicates. This topic is discussed below at pp. 661–662.

### A.

■ The language of the rule applicable to the claimed right to intervene is as follows:

8. For these purposes, I treat the proposed counterclaims seeking a declaration of non-liability on a negligence theory as new theories in the pleadings despite the existence of defendants' counterclaim. *See* n. 3. The parties have not briefed the question how many of the issues of law and fact raised by the applicants' counterclaim will properly be litigated as part of the issues validly raised by defendants' amended answer and counterclaim.

9. Even in such an instance, intervention may be denied to the Rule 24(b) applicant. But that

decision will turn on prudential considerations, not ones of power to adjudicate. Further, a leading treatise suggests that a trial judge operating under the federal rules possesses the inherent power to decline to entertain a permissive intervenor's compulsory counterclaim. *See* 7C C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1921 (1986). In the event that such power were exercised, a final judgment would of course not bar later assertion of the claim. *Id.*

(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) When a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Thus, when the application is, as here, under Rule 24(a)(2), a two-step inquiry is required. First, one must inquire into the "interest" that applicant may have at risk in the litigation, and second, into the protections of that interest offered in the litigation by the existing parties.

The first step calls for a specific evaluation. Here, litigation of some of the issues raised by the amended pleadings are certain to lead to judicial findings on issues relevant to the questions of liability and damages raised in the New York action. The value of the securities offered by the contending bidders formed an important part of the parties' arguments at the preliminary injunction stage of this proceeding, and doubtless will be an issue at trial. Who said what to whom during the concluding hours of the auction; whether and to what extent the special committee relied upon the advice of the bankers; and whether the committee members acted reasonably, knowing what they knew about the steps taken by the bankers who purported to evaluate the bids, are some, but surely not all of the questions that will be adjudicated in this action and that are relevant to the New York action.

Applicants further assert that under New York law they are likely to be bound by any facts or legal issues actually and necessarily adjudicated to final judgment in this action. Applicants contend that, because their interest and that of RJR are close, under applicable law [10] they may be found "in privity" with RJR and precluded from relitigating issues determined in this litigation. Thus, they say their interest in this litigation is intense.

Plaintiffs disagree. They contend that the applicants are not parties to this suit, are independent of RJR, and will not be bound by any aspects of this adjudication. The privity that is required to bar re-litigation, they say, involves successors in interest to property rights. Thus, they conclude that applicants have no interest in this litigation that would give them a right to insert themselves into it.

Plaintiffs must fail on this leg of their argument. In so concluding, I do not purport to determine what the collateral estoppel effect of any judgment in this suit might be. That issue can be definitively determined only by another court presented with a judgment rendered in this case.[11] But without attempting to reach a determination now on that issue, one is compelled to conclude that applicants do face a substantial risk that findings actually made and necessary to this court's final judgment will preclude relitigation by them in the New York action. *See, e.g., Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 317 N.Y. S.2d 315, 320, 265 N.E.2d 739, 743–44 (1970) (persons "whose interests are represented by a party to the action" may be

**10.** *E.g., Gramatan Home Investors Corp. v. Lopez*, 46 N.Y.2d 481, 414 N.Y.S.2d 308, 311–312, 386 N.E.2d 1328, 1331–33 (1979).

**11.** Generally, a focus upon issue preclusion too narrowly conceives of the "interest" that Rule 24(a) protects. Prior to the 1966 amendment to the Federal Rules of Civil Procedure (which are the model for our Chancery Rules), it was clear that, with the exception of claimants to specific property, only a party who "is or may be bound by a judgment in the action" had a right to intervene. *See Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961). The 1966 amendment broadened the situations in which intervention of right would occur. Thereafter:

> If an absentee would be substantially affected in a practical sense ... he should, as a general rule, be entitled to intervene ...

Advisory Committee Note, 28 U.S.C. Rule 24(a). Thus, courts are now cautioned to employ a practical evaluation of all of the circumstances of the case, not simply the legal preclusion that it may entail, in passing upon a Rule 24(a) application.

precluded from relitigating questions necessarily decided in the original action); *Schwartz v. Public Admin. of Co. of Bronx*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969) (stating that collateral estoppel was traditionally applied to preclude inconsistent findings of liability against indemnitor and indemnitee); *Bigelow v. Old Dominion Copper Mining & Smelting Co.*, 225 U.S. 111, 32 S.Ct. 641, 56 L.Ed. 1009 (1912) (stating that when defendants in two suits are indemnitor and indemnitee, collateral estoppel would apply despite the absence of mutuality); *Wilder v. Thomas*, 854 F.2d 605, 621 (2d Cir.1988).

Thus, I conclude that applicants do have an interest in the subject matter of this litigation and that disposition of the action may impede their ability to protect that interest.

I cannot conclude, however, that the investment banks have satisfied the second leg of the test of Rule 24(a). That is, recognizing that doubts of the adequacy of representation should be resolved in favor of intervention, and that a high test obtains in determining such adequacy,[12] I nevertheless do conclude that applicants' interests are fully and fairly represented by the existing defendants. First, it appears that RJR has indemnified the banks against any liability or loss arising out of the services rendered by them "unless it shall be finally judicially determined that such losses ... arise primarily out of ... gross negligence, willful misconduct, or bad faith ... in performing [their] services...." While the scope or effectiveness of this undertaking might itself give rise to litigable differences among the applicants and RJR, it seems altogether plain that as between themselves and any third party such as plaintiffs, RJR's and applicants' interests are not only parallel but largely of the same intensity. Second, even putting aside the effects of the indemnity, it is plainly the case that issues actually litigated in this action will be fully litigated by parties—defendants—with an intense and parallel interest to that of the applicants. The issues of fact to be litigated will, after all, relate to defendants' own potential liability. There is, moreover, no risk that due to lack of coordination or limited communication, that defendants will overlook or fail to energetically pursue points in which applicants have an interest.

Accordingly, although where there is timely application, it will be rare for one with an interest in a matter to be denied the right to participate as a party in that matter, I conclude that this is such a case. *See* cases collected at 7C Wright, Miller & Kane, *supra* § 1909 at n. 46 (1986).

### B.

■ Finally, I turn to the application to intervene permissively, under Rule 24(b).[13] Plainly, the proposed answer and counterclaim share issues of law and fact with the litigation as earlier defined. Thus, intervention may be here permitted as a matter of discretion.

Ordinarily, considerations relating entirely to the litigation itself will determine whether that discretion should be exercised to permit intervention. In some circumstances, however, the court will look beyond the litigation to a larger setting.[14] That is the case here. The relevant considerations in this instance principally involve not questions of delay of this litigation, but issues of comity, fairness and efficiency.

The parties each have maneuvered to seek a forum. This motion is not the first

---

**12.** *Schiff v. RKO Pictures Corp.*, Del.Ch., 136 A.2d 193 (1954) (court must conclude "to a reasonable certainty" that representation is adequate in order to deny intervention of right on that basis).

**13.** The language of the Rule provides as follows: (b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: (1) When a statute confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the Court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

**14.** *See, e.g. Meridian Homes Corp. v. Nicholas W. Prassas & Co.*, 89 F.R.D. 552 (N.D.Ill.1981), *aff'd*, 683 F.2d 201 (7th Cir.1982) (intervention under Rule 24(b) denied when applicant was concurrently plaintiff in another action in which relief was fully available); *United States v. Loew's Inc.*, 20 F.R.D. 423 (S.D.N.Y.1957).

move in that game. Plaintiffs' original decision to institute this action reflected such a choice, as did the institution of the New York action following an opinion at the preliminary injunction stage that was a disappointment. This motion, together with defendants' counterclaim (note 3, *supra*), may be seen in part as a further move in this match. Courts usually are not sympathetic to such maneuverings.

Modern concepts of jurisdiction and theories of optimal adjudication suggest that all claims (1) against a person or those acting with that person, (2) arising from a single chain of events (3) belonging to a single person or class, should where practicable, be adjudicated in a single action if (a) that forum has jurisdiction over all such parties, and (b) is capable of doing prompt and complete justice.[15]

Self-imposed obligations of comity in our federal system, springing from our concern for systemwide efficiency and for the dignity of the courts of other jurisdictions, counsel that this court not exercise jurisdiction where an earlier filed action between the same parties or those in privity with them, arising from the same transaction is going forward. *E.g., Parvin v. Kaufman*, Del. Supr., 236 A.2d 425 (1967). These concerns and the doctrine that springs from them appear to be general throughout the States of this country.

The concept of comity dictates that it is for the courts of New York to determine the appropriate forum in which litigation of the negligence theory against the defendants' advisors should go forward.[16] It is for those courts to decide whether the elemental goals of efficiency and fairness would be best promoted by staying the New York action, in which event intervention would be permitted here, or would rather be best served by adjudicating the negligence theory against the bankers in New York, while related claims against the directors go forward here. This court will not be drawn into a contest on that question but will respect the judgment of the New York courts on the question. Therefore, I will at this time decline to permit intervention under Rule 24(b) but would revisit the subject and permit the intervention should prosecution of the New York action be stayed.

Finally, plaintiffs have asked this court to stay its hand. Defendants resist, saying that this first-filed action has proceeded through much discovery; that a Georgia class action has been stayed in reliance upon this suit going forward; and that they do have a right to require this suit to move ahead.

It is the rule here, as elsewhere, that the first-filed suit will ordinarily proceed unless a powerful showing of inconvenience can be made, which of course is typically attempted by defendant, not, as here, by plaintiffs. Plaintiffs have not attempted such a showing. The motion to stay should be denied.

An order consistent with the foregoing may be submitted by either party, after consultation, and on notice.

---

15. Rules 13, 14, 19, 23 and 24 of the widely emulated Federal Rules of Civil Procedure spring from such a premise. Concepts of *res judicata* (*e.g.,* what constitutes a "claim or cause of action"—see *Restatement (Second) of Judgments* § 24 (1982)) and of collateral estoppel, as well as the law of stays of action reflect such a perception.

16. Plaintiffs claim, as well, that the Full Faith and Credit Clause of the United States Constitution, Article IV, § 1, prevents this court from granting the motion to intervene. On this point, *they* are certainly incorrect. The Full Faith and Credit Clause requires States to give full faith and credit to the "public Acts, Records, and Judicial Proceedings of every other State." That requirement has no application here. With respect to judicial proceedings, the clause only requires full faith and credit to be accorded to final judgments. It is not implicated, as plaintiffs contend, by an order denying a motion to dismiss. *See Pearson v. Pearson*, 69 N.Y.2d 919, 516 N.Y.S.2d 629, 509 N.E.2d 324 (1987); *Four Seasons v. Solarium Products*, 122 Misc.2d 60, 469 N.Y.S.2d 896 (Sup.Ct.1983), *aff'd*, 102 A.D.2d 757, 477 N.Y.S.2d 291 (1984). The United States Supreme Court has settled this point. *Barber v. Barber*, 323 U.S. 77, 65 S.Ct. 137, 89 L.Ed. 82 (1944); *Sistare v. Sistare*, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910).