**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: August 23, 2021
Date Decided: October 20, 2021

Seth D. Rigrodsky, Esquire
Herbert W. Mondros, Esquire
Gina M. Serra, Esquire
Rigrodsky Law, P.A.
300 Delaware Avenue, Suite 210
Wilmington, DE 19801

Bruce E. Jameson, Esquire
John G. Day, Esquire
Prickett, Jones & Elliott, P.A.
1310 North King Street
Wilmington, DE 19801

Re: *Ernesto Rodriguez and Alan Hall v.*
*Great American Insurance Company*
C.A. No. 2020-0387-JRS

Dear Counsel:

Plaintiffs are former stockholders of Zhongpin, Inc. and current judgment creditors of Zhongpin and its board of directors (the "Class Action Defendants"). The underlying judgment was entered in litigation where stockholders, including Plaintiffs, asserted claims of breach of fiduciary duty against the Class Action Defendants relating to a self-interested going-private transaction in which Zhongpin's controlling stockholder cashed-out Zhongpin's minority stockholders following an unfair process and at an unfair price. When the Class Action

Defendants defaulted on their obligation to defend the litigation, the Court entered judgment against them in the amount of $41,282,758 (the "Default Judgment"). That Default Judgment remains unsatisfied. Plaintiffs initiated this action to collect the Default Judgment directly from Zhongpin's director and officer liability ("D&O") insurance carrier, Defendant, Great American Insurance Company ("GAIC").[1]

GAIC disputes both Plaintiffs' standing to assert a direct claim against the Zhongpin D&O policy and whether Plaintiffs have stated a viable claim for coverage under the clear and unambiguous terms of the policy. GAIC has moved to dismiss Plaintiffs' Verified Complaint for Declaratory Judgment (the "Complaint") with prejudice under Chancery Rule 12(b)(6). Following submission of GAIC's motion to dismiss (the "Motion to Dismiss"), the Court, *sua sponte*, asked the parties to address in supplemental submissions whether this Court has subject matter jurisdiction over this dispute.

---

[1] Verified Compl. ("Compl.") (D.I. 1) at ¶ 19; Opening Br. in Supp. Def.'s Mot. to Dismiss ("Def. OB"), Ex. B ("GAIC Policy").

"The Court of Chancery is proudly a court of limited [subject matter] jurisdiction."[2]  With this in mind, this court will "guard[] the historic and important distinction between legal and equitable jurisdiction" even if it must raise the issue *sua sponte*.[3]  "In view of this mandate, I begin and end with a question the parties did not raise: whether this Court has subject matter jurisdiction to hear the plaintiff's claims."[4]  Having determined that it does not, I dismiss the Complaint for want of subject matter jurisdiction.  Plaintiffs may elect to transfer the case to the Superior Court under 10 *Del. C.* § 1902 within 60 days.

If Plaintiffs elect to transfer, they may also request that I be cross-designated to preside over the case *pro tempore* as a Superior Court judge.[5]  Given the procedural posture in which the subject matter jurisdiction issue has been addressed

---

[2] *Perlman v. Vox Media, Inc.*, 2019 WL 2647520, at *4 (Del. Ch. June 27, 2019), *aff'd*, 2021 WL 1042985 (Del. Mar. 18, 2021).

[3] *Id.* (citation omitted).

[4] *Crown Castle Fiber LLC v. City of Wilm.*, 2021 WL 2838425, at *1 (Del. Ch. July 8, 2021).

[5] Del. Const. Art. IV, § 13.

here, and the Court's progress in considering the Motion to Dismiss on the merits, cross-designation may be particularly appropriate in this instance.

## I.  BACKGROUND

I have drawn the facts from well-pled allegations in the Complaint, documents incorporated by reference or integral to that pleading and documents properly subject to judicial notice.[6]  Because I have decided the matter under Chancery Rule 12(b)(1), I am permitted to review matters outside the Complaint, although I had no reason to do so here.[7]

### A. The Parties and Relevant Non-Parties

Plaintiffs, Ernesto Rodriguez and Alan Hall, are former stockholders of Zhongpin and were certified as class representatives in a class action against the Class Action Defendants.[8]

---

[6] *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference" or "integral" to the complaint).

[7] *NAMA Hldgs., LLC v. Related World Mkt. Ctr.,* LLC, 922 A.2d 417, 422 (Del. Ch. 2007).

[8] Compl. ¶ 9; *In re Zhongpin Inc. S'holder Litig.*, C.A. No. 7393-VCS (Feb. 6, 2019).

Defendant, GAIC, is an Ohio-based insurance company that issued the D&O insurance policy to Zhongpin.[9]

Non-party, Zhongpin, was a Delaware meat and food processing company that specialized in vegetables, fruits, pork and pork products.[10] The company's principal corporate offices were in the People's Republic of China ("China").[11]

Non-party, Xianfu Zhu, was the *de facto* controlling stockholder of Zhongpin. Zhu caused Zhongpin to enter a transaction with two of his wholly owned entities whereby the minority stockholders of Zhongpin were cashed out for inadequate consideration. That transaction prompted the claims against the Class Action Defendants that resulted in the Default Judgment.[12] It is alleged that Zhu resides in China.[13]

---

[9] Compl. ¶ 10.

[10] Compl. ¶ 13.

[11] *Id.*

[12] Compl. ¶¶ 2, 14.

[13] Compl. ¶ 20.

### B. The Underlying Action

As noted, the underlying action challenged a merger, memorialized in a definitive merger agreement dated November 26, 2012, whereby Zhu, as controller, squeezed out Zhongpin's minority stockholders.[14] The complaint in that action asserted breach of fiduciary duty claims against the Class Action Defendants and was premised on the contention that these defendants would be obliged to prove the entire fairness of the squeeze-out.[15]

The Class Action Defendants initially were represented by Skadden, Arps, Slate, Meagher & Flom LLP. On February 6, 2019, the Court granted Skadden's motion to withdraw as counsel after the Class Action Defendants failed to meet their financial obligations to the firm.[16] On November 21, 2019, the Court granted Plaintiffs' motion for class certification.[17] And, on April 14, 2020, after the Class Action Defendants failed to engage new counsel, and otherwise failed to participate

---

[14] Compl. ¶ 15.

[15] *Id.*

[16] *In re Zhongpin Inc. S'holder Litig.*, C.A. No. 7393-VCS (Feb. 6, 2019).

[17] Compl. ¶ 18.

in the defense of the litigation, the Court granted Plaintiffs' motion for default judgment.[18]  After further submissions from Plaintiffs, the Court entered the Default Judgment against the Class Action Defendants in the amount of $41,282,758.[19]

The Default Judgment remains unsatisfied.  According to Plaintiffs, they have been unable to collect from the Class Action Defendants, *inter alia*, because they and their assets are located in China.[20]  Having exhausted their efforts to execute on the judgment against the Class Action Defendants, Plaintiffs now turn to Zhongpin's D&O policy for satisfaction.

## C. The GAIC Policy

It is alleged that the D&O policy issued to Zhongpin by GAIC (the "D&O Policy") covered losses incurred during the time frame of the wrongdoing alleged in the underlying action and that the losses are not excluded by the D&O Policy.[21] GAIC disagrees on several grounds, including that Plaintiffs have no standing to

---

[18] Compl. ¶ 2.

[19] *Id.*

[20] Compl. ¶ 10.

[21] Compl. ¶ 21.

seek coverage under the D&O Policy, the claims arose outside the coverage period, and the claims are governed by several exceptions or failures of conditions in the policy. On this latter point, GAIC refers to the D&O Policy's "No Action Clause," found at Section IX, which reads, in relevant part:

> No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the Insured's obligation to pay shall have been finally determined by an adjudication against the Insured or by written agreement of the Insured, claimant and the Insurer.[22]

Relatedly, Section VII(A) provides:

> The Insureds shall not incur Costs of Defense, or admit liability, offer to settle, or agree to any settlement in connection with any Claim without the express prior written consent of the Insurer, which consent shall not be unreasonably withheld. The Insureds shall provide the Insurer with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. Any Loss resulting from any admission of liability, agreement to settle, or Costs of Defense incurred prior to the Insurer's consent shall not be covered hereunder.
>
> Notwithstanding the foregoing, if a Claim can be resolved in which all Loss, including Costs of Defense, does not exceed the applicable Retention, then the Insurer's consent shall not be required, provided, however, the Insureds agree to notify the Insurer of the disposition and provide the Insurer with all information and particulars it may

---

[22] GAIC Policy at IX(C)(1).

reasonably request about the Claim and its disposition as soon as practicable and in no event later than the expiration of this Policy.[23]

And Section VII.B provides: "The Insureds, and not the Insurer, have the duty to defend all Claims, provided that the Insureds shall only retain counsel as is mutually agreed upon with the Insurer."[24] According to GAIC, when read alone or together, these provisions make clear that no coverage is available to insureds who refuse to defend a claim and then allow a default judgment to be taken against them.

## II. ANALYSIS

After oral argument on the Motion to Dismiss, the Court raised, *sua sponte*, the question of whether it could exercise subject matter jurisdiction over Plaintiffs' claims.[25] Under Rule 12(b)(1), this Court will dismiss a claim "if it appears from the record that the Court does not have subject matter jurisdiction over the claim."[26]

---

[23] GAIC Policy at VII(A).

[24] GAIC Policy at VII(B).

[25] D.I. 27. I note that, in its Motion to Dismiss, GAIC questioned whether the Court had subject matter jurisdiction over the claim as it moved to dismiss the Complaint under both Court of Chancery Rules 12(b)(1) and 12(b)(6). (D.I. 5) Despite citing Rule 12(b)(1) as grounds for dismissal in its Motion to Dismiss, this argument was not addressed by either party in the subsequent briefing or oral argument.

[26] *Pitts v. City of Wilm.*, 2009 WL 1204492, at *5 (Del. Ch. Apr. 27, 2009).

"Unlike the standards employed in [a] Rule 12(b)(6) analysis, . . . [under Rule 12(b)(1)], [t]he burden is on the Plaintiff[] to prove jurisdiction exists. Further, the Court need not accept Plaintiff[s'] factual allegations as true and is free to consider facts not alleged in the complaint."[27]

## A. Subject Matter Jurisdiction

The Court of Chancery is a court of "limited jurisdiction;" it maintains subject matter jurisdiction "only when (1) the complaint states a claim for relief that is equitable in character, (2) the complaint requests an equitable remedy when there is no adequate remedy at law or (3) Chancery is vested with jurisdiction by statute."[28] Under the so-called "clean up doctrine," the court may also exercise ancillary jurisdiction over purely legal causes of action that are "part of the same controversy over which the Court originally had subject matter jurisdiction in order to avoid

---

[27] *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007) (cleaned up).

[28] *Perlman*, 2019 WL 2647520, at \*4; *see also* 10 *Del. C.* § 342 ("The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State.").

piecemeal litigation."[29]  In other words, "[i]f a controversy is vested with equitable features which would support Chancery jurisdiction of at least part of the controversy, then the Chancellor *has discretion* to resolve the remaining portions of the controversy as well."[30]

Chancery protects its limited jurisdictional boundaries and "will not exercise subject matter jurisdiction 'where a complete remedy otherwise exists [simply because] the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery.'"[31]  "[U]nlike many jurisdictions, judges in the Delaware Court of Chancery are obligated to decide whether a matter comes within the equitable jurisdiction of this Court regardless of whether the issue has been raised by the parties."[32]  Indeed, even when all parties

---

[29] *Kraft v. WisdomTree Invs., Inc.*, 145 A.3d 969, 974 (Del. Ch. 2016).

[30] *Getty Ref. & Mktg. Co. v. Park Oil, Inc.*, 385 A.2d 147, 149 (Del. Ch. 1978) (emphasis added).

[31] *Christiana Town Ctr.*, 2003 WL 21314499, at *3 (quoting *IBM Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch.1991)).

[32] *Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 WL 3724745, at *2 ("*Massachusetts Mut. II*") (Del. Ch. Sept. 24, 2010) (quoting *IBM Corp. v. Comdisco, Inc.*, 602 A.2d 74, 77 n.5 (Del. Ch. 1991)).

agree that the court may exercise subject matter jurisdiction, our law is clear that equitable jurisdiction "cannot be conferred by consent or agreement."[33]

Plaintiffs seek a declaratory judgment that coverage exists under the D&O Policy and a judgment on their breach of contract claim for damages in an amount at least equal to the Default Judgment in the underlying action. There is no claim based in equity and no prayer for equitable relief. "At heart, the [Plaintiffs] assert that [GAIC] . . . [has] not fulfilled [its] obligations under [its] [] policies. This is fundamentally a breach of contract action for money damages, which is the traditional province of the Superior Court."[34] To be sure, "[i]t is well settled that the Declaratory Judgment Act does not independently confer jurisdiction on this court."[35] Similarly, "a breach of contract action for money damages . . . is the traditional province of the Superior Court."[36]

---

[33] *El Paso Nat. Gas Co. v. TransAmerican Nat. Gas Corp.*, 669 A.2d 36, 39 (Del. 1995).

[34] *Massachusetts Mut. II*, 2010 WL 3724745, at *2.

[35] *Reader v. Wagner*, 2007 WL 3301026, at *1 (Del. Ch. Nov. 1, 2007).

[36] *Massachusetts Mut. II*, 2010 WL 3724745, at *2.

In supplemental letters to the Court, the parties seek to invoke the Court's jurisdiction in two ways. GAIC argues that this Court has exclusive jurisdiction under 8 *Del. C.* § 145(k)–(g), while Plaintiffs argue this Court should exercise its clean-up jurisdiction.[37] Neither argument is persuasive.

### 1. Statutory Jurisdiction

Under 8 *Del. C.* § 145(k), "[t]he Court of Chancery is . . . vested with exclusive jurisdiction to hear and determine all actions for advancement of expenses or indemnification brought under this section or under any . . . agreement, . . . or otherwise."[38] Under 8 *Del. C.* § 145(g), Delaware corporations are authorized to "purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation."[39] GAIC argues that because Plaintiffs seek payment through an insurance policy issued under Section 145(g), Plaintiffs' coverage claims against GAIC fall within Section 145(k)'s grant of

---

[37] Letter from Herbert W. Mondros to the Court Regarding Subject Matter Jurisdiction (Aug. 23, 2021) (D.I. 30) ("Mondros Ltr."), at 2; Letter from Bruce E. Jameson to the Court Regarding Subject Matter Jurisdiction (Aug. 3, 2021) (D.I. 31).

[38] 8 *Del. C.* § 145(k).

[39] 8 *Del. C.* § 145(g).

plenary authority with respect to indemnification such that this Court has exclusive jurisdiction.[40]

GAIC's statutory argument was squarely addressed and rejected by Vice Chancellor Laster in *Massachusetts Mutual Life Insurance Co. v. Certain Underwriters at Lloyd's of London*. There, the plaintiff sought indemnification under a D&O policy. In addressing the plaintiff's argument that D&O coverage issues resemble the indemnification and advancement determinations this court makes under Section 145, the court determined that while "[a] connection between D&O insurance and indemnification admittedly exists," this "does not [] control the jurisdictional analysis."[41] The court went on to observe:

> Although Section 145(g) authorizes Delaware corporations to "purchase and maintain insurance on behalf of any person who is or was a director, officer, employee or agent of the corporation," neither it nor any other Delaware statute gives this Court jurisdiction over

---

[40] GAIC also attempts to draw an analogy between its claims and contribution claims between joint indemnitors that have been adjudicated by this court, citing to *Levy v. HLI Operating Co., Inc.*, 924 A.2d 210 (Del. Ch. 2007). For reasons explained by the court in *Massachusetts Mutual*, the analogy to contribution claims does not work when seeking to invoke equitable jurisdiction to bring a straightforward insurance coverage action in Chancery when the claim clearly belongs in a common law court. *Massachusetts Mut. II*, 2010 WL 3724745, at *3.

[41] *Massachusetts Mut. II*, 2010 WL 3724745, at *5.

D&O policy litigation. The plaintiffs have sued to enforce the policies in the D&O Tower. Until the General Assembly determines otherwise, jurisdiction over that species of case rests with the Superior Court.[42]

GAIC attempts to distinguish *Massachusetts Mutual* by noting that, there, the insured entities, not a third party, were seeking coverage under the policies based on a straightforward breach of contract theory. According to GAIC, the Court should view Plaintiffs' claims differently since Plaintiffs are not named insureds and the Court has yet to determine whether an indemnity obligation even exists.[43] Neither factual circumstance justifies a departure from the core holding in *Massachusetts Mutual*. First, the parties in *Massachusetts Mutual*, like the parties here, contested whether the carrier owed any indemnification obligation.[44] And, like the plaintiff in *Massachusetts Mutual,* Plaintiffs here seek to compel coverage and the payment of

---

[42] *Id.*

[43] Def. OB. 11, 22, 36–37.

[44] *Mass. Mut. Life Ins. Co. v. Certain Underwriters at Lloyd's of London*, 2010 WL 2929552, at *2 (Del. Ch. July 23, 2010) ("Count VI seeks a declaration that together, the Bond Underwriters and D&O Insurers must indemnify the plaintiffs for all eventual settlements or judgments in the Underlying Actions.").

a claim under a D&O policy directly against the insurer.[45] This is precisely the type of dispute that fits squarely within the jurisdiction of our Superior Court and which the judges of that court have developed expertise in resolving.[46]

## 2. The Clean-Up Doctrine

Plaintiffs argue that because this Court exercised jurisdiction over the underlying action, it should exercise jurisdiction under the clean-up doctrine to adjudicate a dispute arising from an attempt to enforce the underlying judgment.[47] I disagree.

This court often considers several factors when determining whether to exercise its jurisdiction to hear ancillary legal claims, including:

> [W]hether retention of the claims will: 1) resolve a factual issue which must be determined in the proceedings; 2) avoid a multiplicity of suits; 3) promote judicial efficiency; 4) do full justice; 5) avoid great expense; 6) afford complete relief in one action; or 7) overcome insufficient

---

[45] Compl. ¶¶ 1, 8.

[46] *Massachusetts Mut. II*, 2010 WL 3724745, at *1 ("Because insurance coverage disputes are typically heard by the Superior Court, I asked myself why this case should be in Chancery.").

[47] Mondros Ltr. at 2 *see also Nicastro v. Rudegeair*, 2007 WL 4054757, at *2 (Del. Ch. Nov. 13, 2007) (explaining the court's "clean-up" subject matter jurisdiction).

modes of procedure at law."[48] Even assuming the Plaintiffs' claims can be classified as "ancillary legal claims," this Court declines to exercise jurisdiction.[49]

To start, aside from the claims for declaratory relief regarding coverage and the associated breach of contract claim, there are no other claims (sounding in equity or otherwise) that must be decided by this Court. Dismissal will not prompt "multiple lawsuits" as the entire claim would be dismissed in favor of litigation of the identical claims in a court with subject matter jurisdiction. As for judicial efficiency, expense, and affording complete relief, the Superior Court is, obviously, fully capable of adjudicating Plaintiffs' claims.[50] And there is no doubt that, if they

---

[48] *Acierno v. Goldstein*, 2004 WL 1488673, at *5 (Del. Ch. June 25, 2004).

[49] "Ancillary legal claims" implies the existence of equitable claims. In this action, as between the former shareholders of Zhongpin and GAIC, there are no equitable claims. This action concerns the interpretation of an insurance policy; the parties' key disputes do not involve whether Zhongpin was liable in the class action lawsuit. Plaintiffs' claims involve new issues against a new party, all of which are legal. "Clean-up" jurisdiction will not be employed as a means to force a new party to litigate purely legal claims in this Court.

[50] Indeed, all of the Delaware cases cited by the parties involving insurance law were either Superior Court cases or Supreme Court appeals of Superior Court cases. *See, e.g.*, *Delmar News, Inc. v. Jacobs Oil Co.*, 584 A.2d 531, 534 (Del. Super. Ct. 1990); *Jones v. State Farm Fire & Cas. Ins. Co*, 1997 Del. Super. LEXIS 201, at *6 (Del. Super. Ct. Apr. 14, 1997); *Walden v. Allstate Ins. Co.*, 913 A.2d 570 (Del. 2006); *Lewis v. Home Ins. Co.*, 314 A.2d 924, 925 (Del. Super. Ct. 1973); *Broadway v. Allstate Prop. & Cas. Ins. Co.*, 2015 WL 4749176, at *5 (Del. Super. Ct. Aug. 11, 2015).

prove their entitlement to coverage, Plaintiffs will have remedies at law that will afford full, fair and complete relief, namely, a declaratory judgment and, if proven, damages.[51] In the unlikely event the Superior Court determines it is unable to provide complete relief, it can transfer the case back to Chancery.[52]

## B. Transfer to the Superior Court

Finally, the fact that another judge might need to become familiar with the facts and legal issues presented in this case is not a persuasive reason to keep it. While the underlying action may have been litigated in this Court, the present action against GAIC, including the insurance law questions associated with Plaintiffs' claims, are new and do not require intimate familiarity with the claims in the

---

[51] *Massachusetts Mut. II*, 2010 WL 3724745, at *4 ("Here, the plaintiffs have a remedy at law that will afford them full, fair, and complete relief. The Superior Court regularly handles suits seeking to allocate liability among insurers.").

[52] *Id*. at *4. Plaintiffs point to *In re RJR Nabisco, Inc. S'holders Litig.* to support this Court's exercise of clean-up jurisdiction. 576 A.2d 654, 658 (Del. Ch. 1990). The court in *Nabisco* exercised clean-up jurisdiction over legal counterclaims given their compulsory nature and "how closely the matters sought to be introduced into the case are tied to those facts that form the basis of the existing pleadings [which alleged equitable claims]." *Id.* Indeed, "the counterclaim appear[ed] largely to present a new legal theory of the already pleaded facts." *Id.* at 659. Those same dynamics are not even remotely present here given that, as mentioned, this action involves new claims against a new party, and those claims have not even a hint of equity among them.

underlying action, only the procedural manner in which they were resolved. "Given the Superior Court's greater expertise in the insurance arena, the relatively early stage of the case, and the potential for assignment to the Complex Commercial Litigation Division, this case should be heard by the Superior Court."[53]

Plaintiffs also contend that transferring this action to "the Superior Court would exacerbate the delay already inflicted by the Class Action Defendants' misconduct."[54] Again, I disagree. Following the transfer, the parties may promptly present the already briefed motion to dismiss to the court in accordance with Section 1902, which provides that, following transfer:

> All or part of the papers filed, or copies thereof, and a transcript of the entries, in the court where the proceeding was originally instituted shall be delivered in accordance with the rules or special orders of such court, by the prothonotary, clerk, or register of that court to the prothonotary, clerk or register of the court to which the proceeding is transferred. The latter court shall thereupon entertain such applications in the proceeding as conform to law and to the rules and practice of such court, and may by rule or special order provide for amendments in pleadings and for all other matters concerning the course of procedure for hearing and determining the cause as justice may require.[55]

---

[53] *Massachusetts Mut. II*, 2010 WL 3724745, at *5.

[54] Mondros Ltr. at 5.

[55] 10 *Del. C.* § 1902.

Accordingly, any delay that a transfer may cause will be *de minimums*; upon transfer, the parties will likely resume the litigation precisely where they left off in Chancery.[56]

### III.   CONCLUSION

For the foregoing reasons, I am satisfied this Court lacks subject matter jurisdiction.  Plaintiffs' claims, therefore, must be dismissed.  Plaintiffs shall have 60 days within which to file a written election of transfer of the action to the Superior Court under 10 *Del. C.* § 1902, failing which this case will be dismissed with prejudice.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

[56] I note that, upon transfer, the parties may request that I be cross-designated to sit as judge of the Superior Court to preside over the action there.  *See* Del. Const. Art. IV, § 13.  I was privileged to have served as a judge on that court for twelve years and presided over insurance coverage disputes while assigned to the Complex Commercial Division.  Given my involvement in the underlying dispute, and my familiarity with (and careful consideration of) the merits of the pending motion to dismiss, cross-designation may be particularly appropriate in this case.