# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| GMF ELCM FUND L.P., GMF ELCM LLC, GMF ELCM REGENCY I LLC, and GMF ELCM REGENCY II LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No. 2018-0840-SG |
| ELCM HCRE GP LLC, ELCM SPONSOR I HOLDCO LLC, ELCM PARTNERS, LLC, ELCM ASSET MANAGER HOLDCO LLC, and ANDREW WHITE, | ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) ) | |
| EAST LAKE CAPITAL MANAGEMENT LLC, ELCM HEALTHCARE REAL ESTATE FUND LP, ELCM SPONSOR I LLC, and GMF RSL BUYER LLC, | ) ) ) ) ) ) | |
| Nominal Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted: June 3, 2021
Date Decided: September 22, 2021

Daniel E. Ross and Bradley R. Aronstam, of ROSS ARONSTAM & MORITZ, Wilmington, Delaware; OF COUNSEL: Joshua S. Amsel and Matthew R. Friedenberg, of WEIL, GOTSHAL & MANGES LLP, New York, New York, *Attorneys for Plaintiffs*.

Joseph H. Huston, Jr., of STEVENS & LEE, P.C., Wilmington, Delaware; OF COUNSEL: Robert K. Keach, BERNSTEIN, SHUR, SAWYER & NELSON, Portland, Maine, *Attorneys for Receiver*.

Andrew White, *pro se*.

Benjamin M. Lord, *pro se*.

Ryan P. Newell of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware, *Attorneys for Nominal Defendants*.

**GLASSCOCK, Vice Chancellor**

This is the latest installment in this long-running litigation, which involves a blizzard of entities created by Andrew White, one of the Defendants, from which to conduct his business. That business, generally, involved the acquisition of nursing homes and the operation of those nursing homes. The business failed, in a way that, in a previous opinion, I described as "curious and insidious."[1] The Plaintiffs are entity investors in one of Mr. White's businesses, ELCM Healthcare Real Estate Fund LP ("HCRE"). Eventually, I found the intentions of the parties in the operation of that entity were frustrated, and I ordered its dissolution.[2]

This Memorandum Opinion resolves several outstanding issues in the matter. Benjamin M. Lord (the "Claimant") timely submitted a proof of claim and a brief in support of that claim (the "Initial Brief") to counsel for Mark F. Stickney, as the permanent receiver and liquidating trustee (the "Liquidating Trustee") of HCRE, on July 9, 2020.[3] On February 17, 2020, the Liquidating Trustee filed an objection (the "Trustee's Objection") to the proof of claim.[4] In response, the Claimant has (1) filed a cross-motion to allow his claim ("Claimant's Cross-Motion");[5] (2) moved to

---

[1] *GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*, 2019 WL 3713844, at *1 (Del. Ch., August 7, 2019).
[2] *Id*.
[3] The Initial Brief is included as Exhibit A to the Claimant's Cross-Motion Brief, defined below. *See generally* Claimant's Cross-Motion Brief, Ex. A, Dkt. No. 386 [hereinafter "Initial Brief"].
[4] Objection to Claim, Dkt. No. 380 [hereinafter "Trustee's Objection"].
[5] Cross-Mot. to Allow, Dkt. No. 386 [hereinafter "Claimant's Cross-Motion"]; Br. in Support of Cross-Mot. to Allow, Dkt. No. 386 [hereinafter "Claimant's Cross-Motion Brief"].

intervene as a party in this action;[6] and (3) objected to the Liquidating Trustee's allowance of a claim by Plaintiff GMF ELCM Fund L.P. ("Claimant's Objection").[7] In his various submissions, the Claimant seeks indemnification from HCRE and four of its affiliates for fees and expenses incurred as part of his defense in a New Jersey state court lawsuit captioned *ELCM HCRE Acquisition V LLC v. The Woodlands at Hayes Mill, et al., v. Andrew White and Benjamin Lord*, NJ Sup. Ct., CAM C 000043-18 (the "New Jersey Litigation") and his fees and expenses incurred in bringing the present claim for indemnification.[8]

This Memorandum Opinion concludes that the Claimant is entitled to indemnification for his fees and expenses incurred in the New Jersey Litigation, as well as his fees and expenses incurred in bringing the present indemnification claim, and that he is entitled to intervene in this action. The parties should inform me whether further briefing or oral argument regarding the Claimant's Objection to GMF ELCM Fund L.P.'s claim is appropriate in light of this opinion.

---

[6] Mot. to Intervene, Dkt. No. 389 [hereinafter "Motion to Intervene"].

[7] Limited Objection to Allowance of Claim, Dkt. No. 395 [hereinafter "Claimant's Objection"].

[8] *See generally* Initial Brief, Claimant's Cross-Motion Brief, Motion to Intervene, Claimant's Objection.

# I. BACKGROUND[9]

## A. Relevant Parties and Non-Parties

Nominal Defendant East Lake Capital Management ("ELCM") is a Delaware limited liability company.[10] ELCM sits at the top of the organizational chart of "East Lake"-associated entities involved in this case.[11]

Nominal Defendant HCRE is a Delaware limited partnership[12] in the process of dissolution.[13] ELCM is the indirect majority owner of HCRE's manager and HCRE's general partner, which has "full control over the business, assets, conduct and affairs of [HCRE]."[14] ELCM also holds indirect ownership interests in HCRE.[15]

ELCM HCRE HoldCo LLC ("HoldCo") is a Delaware limited liability company that is wholly owned by HCRE.[16]

ELCM HCRE Operating Entity I LLC ("Operating Entity") is a Delaware limited liability company that is wholly owned by HoldCo.[17]

---

[9] I draw these limited facts from the parties' papers and exhibits submitted in connection with the motions at issue. A fuller recitation describing the parties, the facts of the case, and its procedural history can be found in *GMF*, 2019 WL 3713844, at *1–11.

[10] I have previously described the entity structure in this case as a "complicated jumble." *See id.* at *2.

[11] *See id.*

[12] Trustee's Objection, Ex. A-3, No. 4 [hereinafter "HCRE Partnership Agreement"].

[13] *See GMF*, 2019 WL 3713844, at *12–13.

[14] HCRE Partnership Agreement § 6.1(a); Claimant's Cross-Motion Brief ¶¶ 2, 62.

[15] *See* Dkt. 205, Ex. 1.

[16] Trustee's Objection, Ex. A-3, No. 5 at 1 [hereinafter "HoldCo LLC Agreement"]; Dkt. 205, Ex. 1.

[17] Trustee's Objection, Ex. A-3, No. 6 at 1 [hereinafter "Operating Entity LLC Agreement"]; Dkt. 205, Ex. 1.

ELCM PropCo I LLC ("PropCo") is a Delaware limited liability company that is wholly owned by Operating Entity.[18]

ELCM TRS I LLC ("TRS") is a Delaware limited liability company that is wholly owned by Operating Entity.[19]

HoldCo, Operating Entity, PropCo, and TRS are collectively referred to as the "LLC Subsidiaries."

Plaintiff GMF ELCM Fund L.P. ("GMF") is a Delaware limited partnership and a limited partner of HCRE.[20]

Defendant Andrew White is the indirect majority owner of ELCM,[21] as well as the manager for each of the LLC Subsidiaries.[22]

The Claimant is a former employee of ELCM and/or its wholly owned subsidiary, East Lake Capital Management Employer I LLC.[23] The Claimant was employed as an analyst from September 26, 2016 until early 2018, and as a vice president from early 2018 until February 25, 2019, when his employment terminated.[24]

---

[18] Trustee's Objection, Ex. A-3, No. 7 at 1 [hereinafter "PropCo LLC Agreement"]; Dkt. 205, Ex. 1.

[19] Trustee's Objection, Ex. A-3, No. 8 at 1 [hereinafter "TRS LLC Agreement"]; Dkt. 205, Ex. 1.

[20] *GMF*, 2019 WL 3713844, at *1.

[21] Dkt. 205, Ex. 1.

[22] HoldCo LLC Agreement ¶ 5(b); Operating LLC Agreement ¶ 5(b); PropCo LLC Agreement ¶ 5(b); TRS LLC Agreement ¶ 5(b) (together, the "LLC Agreements").

[23] Claimant's Cross-Motion Brief ¶ 6.

[24] Initial Brief at 3.

*B. The New Jersey Litigation*

In November 2018, the defendants in a New Jersey action filed a third-party complaint against the Claimant and Mr. White (the "New Jersey Complaint").[25] The New Jersey Complaint brought claims against the Claimant and Mr. White for fraudulent misrepresentation and violations of the New Jersey Racketeering Act in connection with the failed purchase of an assisted living facility by a wholly owned subsidiary of PropCo, ELCM HCRE Acquisition V LLC ("ELCM V").[26] In particular, the New Jersey Complaint alleged that the Claimant and Mr. White fraudulently induced facility owners to enter into contracts to sell their facilities with no intent to honor the contracts.[27]

On July 2, 2019, the claims against the Claimant were dismissed without prejudice.[28] Although the Claimant is *pro se* in this proceeding, he retained counsel at Allman, Kelly & Willner, LLC in connection with the New Jersey Litigation and incurred $88,922.90 in attorneys' fees and expenses, as well as $2,001.43 in personal travel expenses.[29]

The Claimant also incurred $10,620.00 in attorneys' fees and expenses from Allman, Kelly & Willner, LLC in connection with his claim for indemnification.[30]

---

[25] *See* Trustee's Objection, Exhibit A-3, No. 1 [hereinafter the "New Jersey Complaint"].
[26] *See id.* ¶¶ 1, 65–76, 77–103.
[27] *See id.* ¶ 1.
[28] *See* Trustee's Objection, Exhibit A-3, No. 2.
[29] *See* Trustee's Objection, Exhibit A-3, Nos. 12–13, 15.
[30] *See* Trustee's Objection, Exhibit A-3, Nos. 12–13.

Shortly after the New Jersey Litigation was dismissed, the Claimant engaged another law firm, Wick Phillips Gould & Martin LLP, to pursue indemnification, for which he incurred $4,209.50 in attorneys' fees.[31] After I ordered the dissolution of HCRE, the Claimant decided to represent himself *pro se* with respect to his indemnification claim.[32] The Claimant has incurred $11,737.69 in expenses in connection with his *pro se* representation.[33]

### C. Procedural History

In 2018, the Plaintiffs brought the above-captioned action against HCRE, Mr. White and certain of his affiliated business entities, as well as a Motion to Appoint a Receiver *Pendente Lite* (the "Receiver Motion").[34] By order of August 7, 2019, I mandated the dissolution of HCRE and appointed an independent liquidating trustee for the reasons contained in my Memorandum Opinion of that same date.[35]

Mark F. Stickney was appointed Liquidating Trustee and receiver for HCRE by my Third Amended Order Appointing Receiver *Pendente Lite* dated September 6, 2019, replacing the Second Interim Receiver.[36] On June 10, 2020, I granted the Liquidating Trustee's Motion for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Procedures Relating Thereto and entered the Liquidating

---

[31] *See* Trustee's Objection, Exhibit A-3, Nos. 12, 14.
[32] *See* Claimant's Cross-Motion Brief.
[33] *See* Trustee's Objection, Exhibit A-3, Nos. 12, 16–17.
[34] *GMF*, 2019 WL 3713844, at *4.
[35] *See generally id.*
[36] Third Am. Order Appointing Receiver *Pendente Lite*, Dkt. No. 246.

6

Trustee's proposed order (the "Claims Procedure Order").[37] Pursuant to the Claims Procedure Order, creditors and members, general partners and/or limited partners of HCRE or any Downstream Affiliated Entity (defined in the Claims Procedure Order to include the LLC Subsidiaries) had until July 30, 2020 to file a proof of claim with the Liquidating Trustee.[38]

The Claimant timely submitted his proof of claim on July 9, 2020.[39] His claim seeks indemnification from HCRE and the LLC Subsidiaries for fees and expenses incurred as part of the Claimant's defense in the New Jersey Litigation and his fees incurred in bringing the present claim for indemnification.[40]

The Claimant's purported right to indemnification stems from HCRE's limited partnership agreement ("HCRE Partnership Agreement") and the limited liability company agreements or, where applicable, the amended and restated limited liability company agreements (the "LLC Agreements") for each of the LLC Subsidiaries.[41]

The HCRE Partnership Agreement includes the following indemnification provision, in relevant part:

---

[37] Order re Liquidating Trustee's Mot. for Entry of an Order Establishing a Deadline for Filing Proofs of Claim and Procedures Relating Thereto and Approving Form and Manner of Notice Thereof at 1–2, Dkt. No. 353 [hereinafter "Claims Procedure Order"].

[38] Claims Procedure Order ¶ 3(a).

[39] *See generally* Initial Brief.

[40] *See generally* Initial Brief; Claimant's Cross-Motion Brief.

[41] *See generally* Initial Brief.

To the maximum extent not prohibited by applicable law, the Partnership shall indemnify each of (i) the General Partner, (ii) the Management Company, (iii) unless otherwise determined by the General Partner in its sole discretion, each of their respective owners, members, managers, shareholders, partners, directors, officers, employees, agents, advisors, assigns, representatives and affiliates (and their respective owners, members, managers, shareholders, partners, directors, officers, employees, agents, advisors, assigns, representatives and affiliates) . . . against any claims, losses, liabilities, damages, costs or expenses (including attorney fees, judgments and expenses in connection therewith and amounts paid in defense and settlement thereof) to which any of such Persons may directly or indirectly become subject in connection with the Partnership, any Parallel Fund, any Feeder Vehicle, any REIT Subsidiary or any Alternative Investment Vehicle or in connection with any involvement with a Portfolio Investment or a portfolio investment of any Alternative Investment Vehicle . . . .[42]

The LLC Agreements contain the following indemnification provision, which is identical in each:[43]

The Covered Persons shall be indemnified by the Company, to the fullest extent permitted by law, against all expenses and liabilities (including judgments, fines, penalties, interest, amounts paid in settlement with the approval of the Company and counsel fees and disbursements on a solicitor and client basis) arising from the performance of any of their duties or obligations in connection with their service to the Company or this Agreement, or any investment made by or on behalf of, or held by or on behalf of, the Company or its affiliates, including in connection with any civil, criminal, administrative, investigative or other action, suit or proceeding to which any such Covered Person may

---

[42] HCRE Partnership Agreement § 6.9.
[43] LLC Agreements § 13(a).

8

hereafter be made party by reason of being or having been a Covered Person except to the extent that the respective acts or omissions of a Covered Person are finally determined by a court of competent jurisdiction to constitute fraud, willful misconduct or gross negligence.[44]

The following four definitions are relevant to the indemnification provisions in the LLC Agreements:

"Covered Person" shall mean the Member, any Manager or any officer of the Company, and any Affiliate of any of the foregoing.

"Affiliate" shall mean, with respect to any Person, any other Person directly or indirectly Controlling or Controlled by or under direct or indirect common Control with such Person or any Person who has a familial relationship, by blood, marriage or otherwise with such Person or any Affiliate of such Person.

"Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.

"Person" shall mean any natural person, corporation, limited liability company, general partnership, limited partnership, proprietorship, other business organization, trust, union, association or governmental or regulatory authority, or other entity.[45]

---

[44] *Id.* § 13(a).
[45] *Id.* § 13(i).

In response to the Claimant's claim and Initial Brief, the Liquidating Trustee filed the Trustee's Objection on February 17, 2021.[46] The Claimant thereafter filed a cross-motion seeking to allow his claim and opposing the Trustee's Objection on March 4, 2021.[47]

A few weeks after the Claimant filed his cross-motion, on March 29, 2021, counsel for the Liquidating Trustee informed the Claimant by email that, in the event this Court allowed his claim, HCRE would only be able to pay out three percent of it because HCRE was purportedly insolvent.[48] The following day, on March 30, 2021, counsel for the Liquidating Trustee elaborated to the Claimant via email that the Liquidating Trustee intended to treat GMF's $22.2 million claim as a general unsecured claim, rather than an equity interest, which would therefore diminish the payout of the Claimant's claim.[49]

Following this discovery, on April 5, 2021, the Claimant filed the Motion to Intervene in this action along with a proposed complaint (i) bringing a derivative breach of fiduciary duty claim against the Liquidating Trustee, and (ii) seeking an order declaring that GMF's claim is an equity interest, not a general unsecured claim.[50] On May 17, 2021, the Claimant filed an objection to the allowance of

---

[46] *See* Trustee's Objection.
[47] *See* Claimant's Cross-Motion Brief.
[48] *See* Motion to Intervene § II; Motion to Intervene, Ex. A, Nos. 7–9.
[49] Motion to Intervene, Ex. A, No. 9.
[50] *See generally* Motion to Intervene; Motion to Intervene, Ex. A.

10

GMF's $22.2 million claim.[51]   The Liquidating Trustee filed a response to the Motion to Intervene and the Claimant's Objection on May 27, 2021,[52] and the Claimant filed a reply brief on May 28, 2021.[53]

I heard oral argument on the Claimant's indemnification claim on June 1, 2021.  The Claimant subsequently filed a short letter pertaining to the oral argument on June 3, 2021,[54] and I considered the matter fully submitted as of that date.

## II. ANALYSIS

*A. Legal Standards*

### 1. Indemnification

Partnership agreements and limited liability agreements are contracts subject to the general principles of contract interpretation.[55]  Delaware employs the objective theory of contract interpretation.[56]  "Under the objective theory of contracts, 'a contract's construction should be that which would be understood by an objective,

---

[51] *See generally* Claimant's Objection.
[52] Liquidating Trustee's Resp. to Benjamin Lord's Limited Obj. to the Allowance of GMF ELCM Fund LP's Am. Claim, Dkt. No. 397.
[53] Benjamin Lord's Reply in Supp. of His Limited Obj. to the Allowance of GMF ELCM Fund LP's Am. Claim, Dkt. No. 400.
[54] Dkt. No. 402.
[55] *In re Nantucket Island Assocs. Ltd. P'ship Unitholders Litig.*, 810 A.2d 351, 361 (Del. Ch. 2002) ("Like other contracts, limited partnership agreements are to be construed in accordance with their literal terms."); *Mickman v. Am. Int'l Processing, L.L.C.*, 2009 WL 2244608, at *2 (Del. Ch. July 28, 2009) ("LLC agreements are creatures of contract, which should be construed like other contracts.").
[56] *Tektree, LLC v. Borla Performance Indus., Inc.*, 2013 WL 5230705, at *3 (Del. Com. Pl. Sept. 16, 2013).

11

reasonable third party.'"[57]  In practice, the objective theory of contracts requires the court to effectuate the parties' intent,[58] which, absent ambiguity, "must be ascertained from the language of the contract."[59]

Both the Delaware Revised Uniform Limited Partnership Act ("DRULPA") and the Delaware Limited Liability Company Act (the "LLC Act") provide parties with broad "flexibility to craft an agreement that is tailored to their needs,"[60] including by crafting their own indemnification scheme.[61]  This Court typically construes contractual indemnification provisions in partnership and LLC agreements broadly in favor of indemnification.[62]

---

[57] *Id.*

[58] *Zimmerman v. Crothall*, 62 A.3d 676, 690 (Del. Ch. 2013).

[59] *Comet Sys., Inc. S'holders' Agent v. MIVA, Inc.*, 980 A.2d 1024, 1030 (Del. Ch. 2008) (*quoting In re IAC/InterActive Corp.*, 948 A.2d 471, 494 (Del. Ch. 2008)).

[60] *Crothall*, 62 A.3d at 691; *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290 (Del. 1999) ("The [LLC] Act can be characterized as a 'flexible statute' because it generally permits members to engage in private ordering with substantial freedom of contract to govern their relationship, provided they do not contravene any mandatory provisions of the Act."); *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002) ("DRULPA embodies 'the policy of freedom of contract' and 'maximum flexibility.'  DRULPA's 'basic approach is to permit partners to have the broadest possible discretion in drafting their partnership agreements and to furnish answers only in situations where the partners have not expressly made provisions in their partnership agreement' or 'where the agreement is inconsistent with mandatory statutory provisions.'") (*quoting Elf*, 727 A.2d at 291, 291 n.27).

[61] *See Stockman v. Heartland Indus. Partners, L.P.*, 2009 WL 2096213, at *8 (Del. Ch. July 14, 2009) ("DRULPA gives limited partnerships wider freedom of contract to craft their own indemnification scheme for a partnership's indemnitees than is available to corporations under § 145 of the DGCL . . . .").

[62] *Delphi Easter Partners Ltd. P'ship v. Spectacular Partners, Inc.*, 1993 WL 328079, at *2 (Del. Ch. Aug. 6, 1993) ("[C]ourts should interpret language so as to achieve where possible the beneficial purposes that indemnification can afford."); *Stockman*, 2009 WL 2096213, at *18 ("[A]ny ambiguity regarding whether Heartland owes indemnification rights should be resolved against it, and in favor of the Indemnitees seeking indemnification"); *Int'l Rail Partners LLC v. Am. Rail Partners, LLC*, 2020 WL 6882105, at *7 (Del. Ch. Nov. 24, 2020) ("Unlike typical

12

## 2. Intervention

Delaware Court of Chancery Rule 24(a)(2) provides for intervention in an action as of right, upon a timely application, "when the applicant claims an interest relating to the property . . . which is the subject of the action and . . . the disposition of the action may . . . impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."[63]

### B. The Claimant Is Entitled to Indemnification Under the LLC Agreements

The Liquidating Trustee makes four arguments in support of his position that the Claimant is not entitled to indemnification under the LLC Agreements.

First, the Liquidating Trustee argues that the Claimant is not a "Covered Person" as defined by the LLC Agreements.[64]   Second, the Liquidating Trustee argues that the New Jersey Litigation did not "arise as a result of [the Claimant's] service to the [LLC Subsidiaries] or any of their physical assets," as purportedly required by the LLC Agreements.[65]   Third, the Liquidating Trustee contends that the Claimant is disqualified from indemnification because his conduct underlying the New Jersey Litigation allegedly involved "fraud, willful misconduct, and gross

---

commercial contracts, indemnification and advancement provisions in LLC agreements are derived from clear statutory authority and apply much more broadly.").
[63] Del. Ct. Ch. R. 24(a)(2).
[64] Trustee's Objection ¶¶ 38–40.
[65] *Id.* ¶ 41.

13

negligence."[66]  Finally, the Liquidating Trustee contends that "the Claimant's damages are overstated and cannot be substantiated."[67]

As explained below, I am unpersuaded by each of these arguments.

### 1. The Claimant Is a "Covered Person"

The LLC Agreements provide indemnification rights only to "Covered Person[s]."[68]  Covered Person is defined to mean "the Member, any Manager or any officer of the Company, and any Affiliate of any of the foregoing."[69]

The Trustee argues that the Claimant is not a Covered Person, because although he was employed as a vice president of ELCM, he was never employed as an officer of any of the LLC Subsidiaries.[70]  The Claimant does not dispute that he served as a vice president of ELCM, not the LLC Subsidiaries, but he contends that officers of ELCM qualify as "Affiliate[s]" within the definition of Covered Person.[71]

The LLC Agreements define Affiliate to include, "with respect to any Person, any other Person . . . under direct or indirect common Control with such Person . . . ."[72]  Accordingly, the Claimant qualifies as an Affiliate, and therefore a

---

[66] *Id.*
[67] *Id.* ¶ 16(e).
[68] LLC Agreements § 13(a).
[69] *Id.* § 13(i).
[70] Trustee's Objection ¶¶ 38–41.
[71] Claimant's Cross-Motion Brief § VII.A.
[72] LLC Agreements § 13(i).

14

Covered Person, if he is "under direct or indirect common Control with" the Member, any Manager, or any officer of the LLC Subsidiaries.[73]

The Claimant argues that he is an Affiliate because he is "under direct or indirect common Control" with HCRE, the Member for each of the LLC Subsidiaries.[74] Specifically, the Claimant argues that HCRE is controlled by ELCM because ELCM is the "indirect majority owner of" HCRE's general partner and manager.[75] The Claimant further argues that he, too, is controlled by ELCM by virtue of his employment with ELCM, meaning that he and HCRE are both under the common control of ELCM.[76]

Control is defined by the LLC Agreements as follows:

> "Control" shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ownership of voting securities or general partnership or managing member interests, by contract or otherwise. "Controlling" and "Controlled" shall have correlative meanings. Without limiting the generality of the foregoing, a Person shall be deemed to Control any other Person in which it owns, directly or indirectly, a majority of the ownership interests.[77]

The Claimant is correct that, under this definition of control, ELCM controls both HCRE and the Claimant. As Vice Chancellor Laster explained in *PWP Xerion*

---

[73] *Id.* § 13(i).
[74] Claimant's Cross-Motion Brief § VII.A.
[75] *Id.* § VII.A.
[76] *Id.* § VII.A.
[77] LLC Agreements § 13(i).

*Holdings III LLC v. Red Leaf Resources, Inc.*, 2019 WL 5424778, at \*9 (Del. Ch. Oct. 23, 2019), in a discussion concerning the nearly identical definition of control under the Delaware General Corporation Law ("DGCL"),[78] "an officer or employee of an entity is affiliated with that entity . . . because he is under the control of and accountable to the governing body of the entity he serves. An employee is similarly under the control of and accountable to the entity that employs him."[79] The Claimant, who served as both an analyst and a vice president of ELCM,[80] was therefore under the control of ELCM. HCRE is likewise controlled by ELCM because ELCM owns majority interests in HCRE's manager and HCRE's general partner, which is vested with "full control over the business, assets, conduct and affairs of [HCRE]."[81]

Accordingly, because the Claimant is "under direct or indirect common Control" with HCRE, the Member for each of the LLC Subsidiaries, he qualifies as an Affiliate of the LLC Subsidiaries' Members and is thus a Covered Person.

---

[78] Under the DGCL, "'Control,' including the terms 'controlling,' 'controlled by' and 'under common control with,' means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting stock, by contract or otherwise. . . ." 8 *Del. C.* § 203(c)(4).

[79] *PWP Xerion*, 2019 WL 5424778, at \*9 (citations omitted).

[80] Claimant's Cross-Motion Brief ¶ 6.

[81] HCRE Partnership Agreement § 6.1(a).

## 2. The New Jersey Litigation Is Indemnifiable

The LLC Agreements provide for the indemnification of a Covered Person only for expenses and liabilities "arising from the performance of any of their duties or obligations in connection with their service to the Company or this Agreement, or any investment made by or on behalf of, or held by or on behalf of, the Company or its Affiliates . . . ."[82]

The Liquidating Trustee reads this language to mean that the New Jersey Litigation must have arisen "as a result of [the Claimant's] service to the [LLC Subsidiaries] or any of their physical assets."[83] The Liquidating Trustee argues that the New Jersey Litigation does not meet this criterion because the subject of the litigation was ELCM V, not any of the LLC Subsidiaries, and also because ELCM V failed to acquire the facility at issue.[84] To hold otherwise, says the Liquidating Trustee, would "ignore the corporate forms established to govern the intercompany operations between and among the various ELCM entities."[85]

I am unpersuaded by the Liquidating Trustee's arguments. The indemnification provisions do not apply narrowly to just the LLC Subsidiaries or their "physical assets," as the Liquidating Trustee contends. Rather, the Claimant's

---

[82] LLC Agreements § 13(a).
[83] Trustee's Objection ¶ 41.
[84] *Id.*
[85] *Id.*

indemnification right applies to expenses and liabilities arising from, among other things, "*any* investment made by or on behalf of, or held by or on behalf of, the Company *or its Affiliates* . . . ."[86] The subject of the New Jersey Litigation was the unconsummated acquisition of certain facilities by ELCM V.[87] ELCM V was a wholly owned subsidiary of PropCo, which itself was directly owned by Operating Entity and indirectly owned by HoldCo.[88] Accordingly, ELCM V was an Affiliate of at least those three LLC Subsidiaries because it was "directly or indirectly . . . Controlled" by them.[89] To my mind, it is clear, therefore, that the New Jersey Litigation involved an investment "made by or on behalf of . . . [the LLC Subsidiaries'] Affiliates . . . ."[90]

Furthermore, the New Jersey Litigation involves at least one act performed by the Claimant that was directly in service of the LLC Subsidiary PropCo: forming ELCM V as its direct subsidiary for the purpose of purchasing the facility.[91] Indeed, the New Jersey Complaint alleges that the Claimant's misconduct involved "form[ing] acquisition companies, often with some variation of the name 'ELCM HCRE Acquisition,' . . . to enter into agreements to purchase residential health care

---

[86] LLC Agreements § 13(a) (emphasis added).
[87] *See generally* New Jersey Complaint.
[88] Dkt. 205, Ex. 1.
[89] LLC Agreements § 13(i).
[90] *Id.* § 13(a).
[91] Claimant's Cross-Motion Brief ¶ 66.

facilities . . . ."[92]  The New Jersey Litigation therefore "ar[ose] from the performance of [the Claimant's] duties [and] obligations in connection with [his] service to [PropCo]."[93]

### 3. The Claimant's Alleged Conduct Does Not Bar Indemnification

The LLC Agreements exclude indemnification for "acts or omissions of a Covered Person [that] are finally determined by a court of competent jurisdiction to constitute fraud, willful misconduct or gross negligence."[94]  The Liquidating Trustee concludes, therefore, that the Claimant's indemnification claims "are barred as he committed fraud, willful misconduct, and gross negligence."[95]  The Liquidating Trustee bases this conclusion on the fact that the New Jersey Complaint brings claims against the Claimant for "fraud, conspiracy, and racketeering."[96]

As the Claimant points out, however, this exclusion only applies if such fraud, willful misconduct or gross negligence is "finally determined by a court of competent jurisdiction."[97]  Because the claims against the Claimant in the New Jersey Litigation were dismissed without prejudice, no such determination has been made.  This exclusion therefore does not bar the Claimant's indemnification claim.

---

[92] *See* New Jersey Complaint ¶ 40.
[93] LLC Agreements § 13(a).
[94] *Id.* § 13(a).
[95] Trustee's Objection ¶ 41.
[96] *Id.* ¶ 33.
[97] Claimant's Cross-Motion Brief ¶¶ 72–73.

#### 4. The Claimant Substantiated His Litigation Expenses

The Liquidating Trustee makes a perfunctory argument that the fees and expenses incurred by the Claimant cannot be substantiated.[98] The Claimant, however, introduced two sworn affidavits from the attorneys that he engaged in connection with the New Jersey Litigation and his indemnification claim, receipts for his travel expenses, and invoices for the litigation expenses that he incurred in connection with his *pro se* representation.[99] The Liquidating Trustee does not offer any reasons why these exhibits are insufficient or make any argument supporting his bald assertion that "the Claimant's damages are overstated and cannot be substantiated."[100] I am satisfied that the sworn affidavits, receipts and invoices are sufficient to substantiate the Claimant's attorneys' fees and expenses.

### C. The Claimant Is Entitled to Fees on Fees Under the LLC Agreements

The Claimant contends that, under the language of the LLC Agreements, which provide for indemnification "to the fullest extent permitted by law," he is entitled to fees and expenses incurred in connection with his pursuit of indemnification for the New Jersey Litigation.

In *Stifel Financial Corp. v. Cochran*, the Supreme Court of Delaware held that the plaintiff was entitled to fees on fees in connection with an indemnification suit

---

[98] Trustee's Objection ¶ 16.
[99] *See* Trustee's Objection, Ex. A-3, Nos. 12–17.
[100] Trustee's Objection ¶ 16.

under a corporate bylaw that provided for indemnification to the "fullest extent permitted by law."[101] The Court held that indemnification for fees on fees was covered under this bylaw because such indemnification was "authorized by law" under DGCL § 145(a).[102] Although *Stifel* involved the bylaws of a corporation, the Court's reasoning is equally applicable in the context of the LLC Agreements. As I explained above, the LLC Act "grants LLCs broad authority to provide for indemnification by contract in their agreements."[103] This includes indemnification for fees on fees. Therefore, the "only way out of the *Stifel* 'fees on fees' award was for the [LLC Subsidiaries] 'to tailor their indemnification . . . to exclude 'fees on fees.'"[104] The LLC Subsidiaries chose not to do so. The Claimant is thus entitled to indemnification for the fees that he incurred in pursuing his indemnification claim.[105]

---

[101] 809 A.2d 555, 560–63 (Del. 2002).

[102] *Id.* at 561.

[103] *Hyatt v. Al Jazeera Am. Holdings II, LLC*, 2016 WL 1301743, at *7 n.38 (Del. Ch. Mar. 31, 2016) (quoting *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co., LLC*, 853 A.2d 124, 127 (Del. Ch. 2004)).

[104] *DeLucca v. KKAT Mgmt., L.L.C.*, 2006 WL 224058, at *15 (Del. Ch. Jan. 23, 2006).

[105] Neither case cited by the Liquidating Trustee holds that "clear and unequivocal articulation of intent" to indemnify fees on fees is required in the context of an LLC agreement. *See TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466 (Del. Super. Ct. Mar. 29, 2012); *Data Ctrs., LLC v. 1743 Holdings LLC*, 2015 WL 9464503 (Del. Super. Ct. Oct. 27, 2015). Both *TranSched* and *Data Centers* involved indemnification provisions in negotiated, bilateral agreements, which are distinguishable from the LLC Agreements at issue here. *See Int'l Rail Partners*, 2020 WL 6882105, at *7 ("Defendant's argument, however, ignores the fundamental distinction that the *TranSched* line of cases involved arm's length, bilateral, commercial contracts, where a counterparty sought to turn an indemnification provision into a fee-shifting provision. Unlike typical commercial contracts, indemnification and advancement provisions in LLC agreements are derived from clear statutory authority and apply much more broadly.").

*     *     *

Accordingly, the Claimant has a valid claim for indemnification under the LLC Agreements for his fees and expenses incurred in connection with the New Jersey Litigation, as well as his fees and expenses in seeking his indemnification claim, in the amount of $117,491.52. Having determined that the Claimant is entitled to indemnification under the LLC Agreements, I need not decide whether he has a separate right to indemnification under the HCRE Partnership Agreement.[106]

### D. The Claimant Is Entitled to Intervene

Having decided that the Claimant is entitled to indemnification, and thus is a creditor of HCRE, the balance of the intervention request is easy to resolve. To prevail on his motion to intervene, the Claimant must have "(a) timely moved to intervene, (b) in order to protect a property interest at issue in this case, (c) that would be impaired by the disposition of this action, (d) under circumstances where their interests are not adequately represented by [the existing parties]."[107] The Claimant satisfies each of these requirements.

---

[106] That agreement, I note, contains language providing that the Partnership "shall indemnify" certain parties "unless otherwise determined by the General Partner in its sole discretion . . . ." HCRE Partnership Agreement § 6.9. To the extent enforceable, this language indicates that any indemnification can only come at the pleasure of the General Partner. The Liquidating Trustee contends that the General Partner, via Mr. White, determined not to indemnify the Claimant. Trustee's Objection § B. The Liquidating Trustee further contends that, as Liquidating Trustee, he is vested with all rights of the General Partner, and that he also determined not to indemnify the Claimant by filing the Trustee's Objection. *Id.*

[107] *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, 2015 WL 778846, at *3 (Del. Ch. Feb. 24, 2015).

22

## 1. The Motion to Intervene Was Timely

"Timeliness is a flexible concept, requiring consideration of all the circumstances of a particular case."[108] The timeliness determination "is a fact specific analysis that rests in the sound discretion of the trial court."[109] The Court considers two factors in connection with a timeliness analysis: "the inexcusableness of the delay and the prejudice to existing parties."[110]

Here, the Claimant filed his Motion to Intervene on April 5, 2021, just one week after the Liquidating Trustee informed him on March 29, 2021 that HCRE would only be able to pay out three percent of his claim, and only six weeks after the Liquidating Trustee objected to his claim on February 17, 2021. That is not inexcusable delay. Nor would any delay prejudice the existing parties. Indeed, none of the Plaintiffs in this action have objected to the Claimant's Motion to Intervene, nor does the Liquidating Trustee dispute that the Motion to Intervene is timely. I find that the Claimant's Motion to Intervene is timely.

## 2. The Claimant Has a Property Interest at Issue in this Case

The Claimant is not a "busybody intermeddler" in this action.[111] Rather, as explained above, he is a creditor with a valid claim for indemnification against the

---

[108] *Dugan v. Dineen*, 1990 WL 82719, at *5 (Del. Ch. June 12, 1990).
[109] *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003).
[110] *Id.*
[111] *Wells Fargo Bank, N.A. v. Peninsula at Longneck, L.L.C.*, 2013 WL 285727, at *2 (Del. Ch. Jan. 25, 2013).

23

LLC Subsidiaries. Each LLC Subsidiary is ultimately wholly owned by HCRE, the subject of dissolution in this action. Accordingly, the Claimant's ability to collect on his indemnification claim will be impacted by the treatment of claims with respect to HCRE's various creditors. The Claimant therefore has a valid property interest at stake in this litigation.

3. The Claimant's Indemnification Claim May Be Impaired by the Disposition of this Action

To establish an intervention as of right, the Claimant must show that his indemnification claim "would be impaired by the disposition of this action."[112] This calls for the Court to decide whether, "'as a practical matter' the intervener applicant's ability to protect h[is] rights will be impeded."[113] The Claimant has made such a showing here.

As explained above, the Claimant has established a valid indemnification claim against the LLC Subsidiaries for $117,491.52. After objecting to the Claimant's indemnification claim, the Liquidating Trustee informed the Claimant that even if his claim is valid, he would only receive three percent in part because GMF's $22.2 million claim would diminish the Claimant's payout since it is being treated as a general unsecured claim rather than an equity interest.[114] The Claimant

---

[112] *Carlyle Inv. Mgmt.*, 2015 WL 778846, at *3.
[113] *Harris v. RHH Partners, LP*, 2009 WL 891810, at *3 (Del. Ch. Apr. 3, 2009).
[114] *See* Motion to Intervene ¶ 5.

24

disputes this classification of GMF's claim and has filed a proposed complaint seeking, among other things, an order declaring that GMF's claim should be classified as an equity interest and enjoining the Liquidating Trustee from treating it as a general unsecured claim.[115] Accordingly, I am persuaded that the Claimant's ability to protect his indemnification claim may be impaired by the disposition of this action.

### 4. The Claimant's Indemnification Claim Is Not Adequately Represented by Existing Parties

"[D]oubts of the adequacy of representation should be resolved in favor of intervention."[116] The Court "must conclude 'to a reasonable certainty' that representation is adequate in order to deny intervention of right on that basis."[117]

None of the existing parties to this action adequately represent the Claimant's interest in his indemnification claim. First, in light of the Liquidating Trustee's objections to the Claimant's indemnification claim, I am not "reasonably certain" that he will adequately represent the Claimant's creditor interests. Second, GMF, which is a purported creditor competing for the same HCRE assets, obviously cannot adequately represent the Claimant's interests. Finally, as to the Defendants in this action, I previously granted a motion for default judgment against Defendants

---

[115] Motion to Intervene, Ex. A ¶¶ 61–65.
[116] *In re RJR Nabisco, Inc. S'holders Litig.*, 576 A.2d 654, 661 (Del. Ch. 1990).
[117] *Id.* (*citing Schiff v. RKO Pictures Corp.*, 136 A.2d 193, 195 (1954)).

25

ELCM HCRE GP LLC, ELCM Sponsor I Holdco LLC, ELCM Partners LLC, and ELCM Asset Manager Holdco LLC.[118]   Moreover, it would strain credulity to suggest that Mr. White, whose problematic conduct in this litigation is described in my Memorandum Opinion of August 7, 2019,[119] could adequately represent the Claimant's interests.

Accordingly, the Claimant is entitled to intervene in this action.

### III. CONCLUSION

For the foregoing reasons, the Claimant's Cross-Motion and Motion to Intervene in this action are GRANTED.  The Trustee's Objection is DENIED.  The parties should confer, provide a form of order consistent with the decision above, and inform the Court whether further briefing or oral argument is appropriate in light of this decision, regarding the Claimant's Objection or otherwise.

---

[118] *See* Order Granting Pls.' Mot. for Default J., Dkt. No. 278.
[119] *GMF*, 2019 WL 3713844, at *4–13.